IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STANLEY MILLER, #245426, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:10-CV-818-WC |
| | ) | [WO] |
| | ) | |
| BOB RILEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Stanley Miller, a state inmate, alleges that rights, privileges or immunities afforded him under the Constitution or laws of the United States have been abridged by the defendants.   Miller names former Governor Bob Riley, former Attorney General Troy King, former Director of Public Safety J. Christopher Murphy, former Commissioner of the Alabama Department of Corrections Richard Allen, Director of Central Records Kathy Holt and Director of Classification Carolyn Golson as defendants in this cause of action.   Miller seeks a trial by jury, monetary damages, declaratory relief, preliminary/permanent injunctive relief and costs.

The defendants filed an answer, special report and relevant supporting evidentiary materials addressing Miller's claims for relief.   The court informed Miller that the defendants' special report may, at any time, be treated as a motion for summary judgment,

and the court explained to Miller the proper manner in which to respond to a motion for summary judgment. *Order of November 10, 2010 - Doc. No. 13*. Miller responded to the special report filed by the defendants. *Doc. No. 25*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and Miller's response in opposition, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings,

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison [and other relevant state] authorities. Unless

> a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Miller is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v.*

4

*Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing

5

summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Miller fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. BACKGROUND

Miller filed this action while incarcerated at the Elmore Correctional Facility in Elmore, Alabama. The documents before the court demonstrate that Miller was convicted in 2006 by the Circuit Court of Talladega County, Alabama for first degree sodomy and first degree rape involving an eleven year old girl. The trial court sentenced Miller to twenty years imprisonment for these convictions. Miller has been continuously incarcerated since the imposition of his convictions. He has a projected release date of 2026 with an initial parole consideration date in 2021.

In the present action, Miller alleges that the Alabama Community Notification Act ["the Act" or "ACNA"], *Ala. Code* 1975 § 15-20-1 *et seq.* (1975, as amended) (repealed), is unconstitutional. In support of the complaint, Miller makes a variety of allegations claiming abuse, harassment, discrimination and general hardship based on potential application of the ACNA to him upon his release from prison. Miller also asserts the following federal claims for relief: (1) The defendants' enactment, application and enforcement of the ACNA violates his substantive rights, privileges and immunities protected by the Constitution; (2) The defendants' enactment, application and enforcement of the ACNA violates the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, *et seq.*; (3) The defendants' enactment, application and enforcement of the ACNA violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc(1)(a), *et seq.*; (4) The defendants' enactment, application and enforcement of the ACNA violates the

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; (5) The defendants' enactment, application and enforcement of the ACNA violates the Alabama Religious Freedom Amendment, under Art. I, § 3.01 of the Alabama Constitution. *Doc. No. 1* at 5-13.  In his response to the defendants' report, Miller complains that the State of Alabama does not provide a classification system for sex offenders on its public registry or community notifications which would allow sex offenders to be grouped according to an individual assessment of potential dangerousness and risk of re-offending. *Doc. No. 25* at 9.

## IV.  DISCUSSION

### A.  Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent Miller seeks to sue the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116

8

F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity).

### B.  The ACNA Claims

The Alabama Community Notification Act became effective in 1996.  On July 1, 2011, the Act was repealed by the Alabama Sex Offender Registration and Community Notification Act, Alabama Act No. 2011–640, § 49, Ala. Code § 15–20A–1, *et seq.*, ["ASORCNA"].  The ASORCNA now governs the registration and community notification requirements applicable to adult sex offenders, *see* Ala. Code § 15-20A-4(1), and is "applicable to every adult sex offender convicted of a sex offense as defined in Section 15-20A-5, without regard to when his or her crime or crimes were committed or his or her duty to register arose."  Ala. Code § 15-20A-3.  Under the circumstances of this case, the earliest Miller could be released from prison would be upon a grant of parole.  In accordance with applicable parole procedures, his initial parole consideration date is scheduled to occur in January of 2021.  Upon his release, either on parole or at the end of his sentence sometime

in 2026, and assuming no further change in the law, Miller will be subject to the provisions of ASORCNA due to his prior convictions for first degree sodomy and first degree rape.

Because the ACNA was repealed by the ASORCNA, the court must decide whether repeal of the ACNA renders Miller's challenges to the statute moot.  If repeal of the ACNA has rendered the instant challenges to the statute moot, then these claims must be dismissed for lack of jurisdiction.  As previously stated, Miller was convicted in 2006 of first degree sodomy and first degree rape for offenses committed against an eleven year old girl.  It is clear to this court that any past or current challenges for declaratory and/or injunctive relief Miller seeks to make regarding the validity of the ACNA, its potential future application to him or enforcement against him are now moot due to repeal of the statute.

Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies."  U.S. Const. Art. III, 2.  Federal courts are not permitted to rule upon questions which are hypothetical in nature or which do not affect the rights of the parties in the case before the court.  *Lewis v. Cont'l Bank Corp.*, 494 US. 472, 477 (1990).  This is because courts do not sit to render advisory opinions.  *North Carolina v. Rice*, 404 U. S. 244, 246 (1971).  An actual controversy must exist at all times when the case is pending.  *Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome.  *Weinstein v. Bradford*, 423 U.S. 147 (1975); *Flast v. Cohen,* 392 U.S. 83, 95 (1968) ("Where the question sought to be

adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented."). "Article III requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation." *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987). Because mootness is jurisdictional, dismissal is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion. *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001).

In *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987), the Eleventh Circuit Court of Appeals determined:

> A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the litigation, such as where there is no reasonable expectation that the violation will occur again or where interim relief or events have eradicated the effects of the alleged violation.

(citations omitted).

"Generally, a challenge to the constitutionality of a statute is mooted by repeal of the statute." *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1329 (11th Cir. 2004); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) ("[T]he repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation."); *Kremens v. Bartley,* 431 U.S. 119, 128-29 (1977) (holding moot a constitutional challenge to a state statute governing the involuntary commitment of mentally ill minors, because the law had been replaced with a different statute). Under the circumstances of this case, repeal of the ACNA has rendered Miller's

requests for injunctive and declaratory relief with respect to the Act moot thereby depriving the court of jurisdiction over these claims for relief.

The repeal of a challenged law does not necessarily moot a claim for damages by a plaintiff alleging a past violation of his rights.  *Outdoor Media Group, Inc., v. City of Beaumont,* 506 F.3d 895,  902 (9th Cir. 2007).  In this regard, however, the court must first consider whether Miller suffered any injury with respect to the instant claims concerning purported application of the ACNA to him.  *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996).  The mere speculative threat of injury is insufficient for Article III purposes.  *Hill v. McDonough*, 547 U.S. 573, 585, 126 S.Ct. 2096, 2104 (2006) ("[F]ederal courts can and should protect States from . . . speculative suits."); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (plaintiff who challenges state statute must demonstrate realistic danger of sustaining direct injury due to enforcement of the statute against him); *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiffs' subjective belief harm may occur fails to implicate a constitutionally protected interest); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (jurisdiction cannot be premised upon mere speculation).

The record before the court establishes that the provisions of the ACNA were never applied to Miller; instead, Miller concedes that he has been imprisoned since the imposition of his convictions for sodomy and rape.  *Doc. No. 1-1* (*Affidavit of Stanley Miller*) at 1. Thus, it is clear that Miller bases his claim for damages on a past potential threat of

application of various provisions of the now-repealed statute.  Miller may not, however, proceed on prospective damage claims under § 1983.  *Tanner Advertising Group v. Fayette Cnty.*, 451 F.3d 777, 786 (11th Cir. 2006).  As the Eleventh Circuit explained, damages are reserved for constitutional deprivations that have occurred, not those that are merely speculative.  *Id*.  Since there is no present case or controversy to support the court's jurisdiction over Miller's challenges to the prior possible application of various provisions of the ACNA to him, these claims are due to be dismissed for lack of jurisdiction.

## C.  The Remaining Federal Causes of Action

1.  <u>General Claims of Constitutional/Federal Violations</u>.  Miller maintains that by enacting, applying and enforcing the ACNA the defendants willfully subjected him and/or conspired to subject him to alleged violations of his substantive rights, privileges and immunities protected by the Constitution, including various rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments, as well rights protected under Art. 1, § 9, the Constitutional Rights of Incarcerated Persons Act, 42 U.S.C. § 1997, *et seq*., the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(1)(a), *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and the Alabama Religious Freedom Amendment, Art. I, § 3.01 of the Alabama Constitution.  To the extent these allegations are not subject to dismissal for the reasons previously set forth in this opinion, *infra* at 9-13, and to the extent Miller may bring a cause of action under the above delineated constitutional amendments and/or Acts, his contentions are merely broad

assertions of constitutional violations without any facts to support his claims that the defendants violated or conspired to violate his rights under the Constitution and stated statutory provisions through enactment, application and/or enforcement of the ACNA.[2]  *See Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal).  That is, Miller's complaint fails to identify any specific facts which allow this court to make a plausible inference that the challenged conduct or actions he attributes to the named defendants amounted to a violation of his constitutional rights or federal law.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Marsh v. Butler Cnty.,* 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.").  "[A] complaint must

---

[2]  With respect to Miller's challenge to the defendants "enactment" of the ACNA, none of the named defendants are or were responsible for enacting state laws.  Even if Miller had named a proper defendant, the Supreme Court has "recognized that state legislators enjoy common-law immunity from liability for their legislative acts" and that this immunity can shield officials against suits brought under 42 U.S.C. § 1983 seeking damages, declaratory relief, or injunctive relief.  *Supreme Court of Va. v. Consumers Union of the U.S., Inc.,* 446 U.S. 719, 732 (1980) (citing *Tenney v. Brandhove,* 341 U.S. 367 (1951)); *see also Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1062 (11th Cir. 1992) (legislative immunity applies to "those acts which are 'necessary to preserve the integrity of the legislative process.'") (quoting *United States v. Brewster,* 408 U.S. 501, 517 (1972)).  In *Scott v. Taylor,* 405 F.3d 1251, 1257 (11th Cir. 2005), the Eleventh Circuit concluded that state legislators who act in their legislative capacities are entitled to absolute legislative immunity whether a suit seeks damages or prospective relief and regardless of whether the state legislators are named in their individual or official capacities.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S. 555, 556 (2007) (internal citation omitted).   Miller cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show how the conduct or actions of a defendant amounted to a violation of his constitutional rights. *Id.*   Further, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government official defendant, ***through the official's own individual actions***, has violated the Constitution."   556 U.S. at 676, 129 S.Ct. at 1948 (emphasis added). The plaintiff must plead that a defendant acted with "purpose rather than knowledge" to satisfy this standard.   556 U.S. at 677, 129 S.Ct. at 1949.

In this case, Miller fails to specify any injury or harm actually caused by the allegedly unconstitutional conduct of the defendants and only conclusorily asserts that upon his release he will suffer "a very hard time readjusting back to life . . . and will always be looking over his shoulder . . . because people will look at me in a different way than they did before." *Doc. No. 1-1 (Affidavit of Stanley Miller)* at 1.   This shortcoming, coupled with Miller's broad and unsubstantiated allegations of constitutional violations against the named defendants, in the absence of any factual development to support his claims against the

15

defendants, is insufficient to defeat their motion for summary judgment.[3]   The court, therefore, concludes that the defendants' dispositive motion is due to be granted with respect to the allegations set forth above to the extent these allegations are not otherwise subject to dismissal for lack of jurisdiction.[4]   *Celotex*, 477 U.S. at 324; *Harris*, 65 F.3d at 916.

     2.   The Sex Offender Registry Classification Claim.   In his response, Miller contends that the defendants should institute a tiered classification system based on the convicted sex offender's individual dangerousness. *Doc. No. 25* at 9.   Miller argues that the failure of the State of Alabama to have such a classification system on its website registry of sex offenders and set forth in the community notifications violates his constitutional rights. *Id*.   Miller appears to base this claim on the belief that without disseminating information as to a registrant's potential dangerousness those presumably not dangerous registrants must endure

---

   [3]   Although in his response Miller argues that "he does suffer from his convictions, as he is ineligible for many of the Dept. of Corrections programs because of his sex offenses . . . [and] suffers the stigma of his sex offenses within the prison system[,]" *Doc. No. 25* at 9, it is clear that these alleged sufferings are not attributable to application of the ACNA to Miller.   Rather, the assertions made by Miller demonstrate that the lack of access to prison programs and any stigma imputed to him are due solely to his convictions for first degree sodomy and first degree rape.

   [4]   Miller likewise asserts that the defendants conspired to violate his rights under 42 U.S.C. § 1985, as well as under 42 U.S.C. § 1983.   Under § 1985, Miller must establish (a) the existence of a conspiracy; (b) that the defendants intended to deny Miller of his equal protection of laws, or equal privileges and immunities under the laws; (c) injury or deprivation of a federally-protected right; (d) an overt act in furtherance of the object of the conspiracy; and (e) some racial or otherwise class-based invidiously discriminatory animus behind the conspirator's action. *Arnold v. Bd. of Educ. of Escambia Cnty., Alabama,* 880 F.2d 305, 317-318 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993).   As this court has already determined, Miller's allegations of a conspiracy between the defendants are conclusory, vague and general which is insufficient. *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990); *Fullman,* 739 F.2d at 556-57. Additionally, Miller has not alleged that the defendants' conduct was motivated by race or any other class-based invidiously discriminatory animus.   Consequently, Miller fails to state a claim for relief under § 1985.

the stigma of the general public erroneously thinking otherwise.

In *Connecticut Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the Court addressed a Fourteenth Amendment Due Process challenge to Connecticut's sex offender registration and notification law on grounds that it did not provide registrants a pre-deprivation hearing to determine whether they were currently dangerous. Reasoning that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," and that Connecticut's registration requirement was "based on the fact of previous conviction, not the fact of current dangerousness," the Supreme Court found that "due process does not entitle [a defendant] to a hearing . . . ." 538 U.S. at 4, 7.

Here, Miller's contention that he has a constitutional right not to be stigmatized due to omission of a registrant's potential dangerousness on Alabama's sex offender registry, community notification flyers and website listings entitles him to no relief. Although Miller does not assert violation of a specific federal constitutional right with respect to this claim, the court understands this allegation as one implicating the Fourteenth Amendment Due Process Clause. The law is well-settled, however, that damage to reputation alone does not implicate a protected liberty or property interest. *See Paul v. Davis,* 424 U.S. 693, 701 (1976). In order for a defamation claim to be viable under § 1983, a plaintiff must show that the "governmental action taken . . . deprived [him] of a right previously held under state law." *Id.* at 708. That is, in addition to showing reputational harm, the plaintiff must also

show an alteration or extinguishment of an interest protected by the Constitution or state law. *Id.* at 708-09.  This is known as the "stigma-plus" test.  *Id.* at 711.

The *Doe* Court applied the "stigma-plus" test in context of the challenge to Connecticut's sex offender registry law.  As noted, the Court determined that because the basis of Connecticut's registration requirement is the fact of conviction alone, dangerousness and the opportunity to be heard on the issue of dangerousness are simply not material issues. 538 U.S. at 7-8.  Alabama's current sex offender website registry and its community notifications are based upon the fact of an offender's conviction.  There is no indicator regarding the dangerousness of the persons listed on the registry or named in the flyers.  *See* Alabama Department of Public Safety Community Information Center, *available at* http://dps.alabama.gov.  *See* Ala. Code § 15-20A-8.[5]  Further, there is no indicator on the website or the community notifications that the State has made an individual determination regarding a registrant's dangerousness.  The registry actually cautions persons that "the information contained on th[e] site may not reflect the current residence, status, or other information regarding the offender."  *Id*.  Thus, similar to the statute at issue in *Connecticut Dept. of Public Safety v. Doe*, the State of Alabama "decided that the registry of information of ***all*** sex offenders – currently dangerous or not – must be publicly disclosed" and "states are not barred by principles of '***procedural*** due process' from drawing such classifications."

---

[5]  Ala. Code § 15-20A-8 concerns registration information for the public registry website and delineates the information which is to be provided thereon.

538 U.S. at 11 (emphasis in original).  Based on the foregoing, the defendants are entitled

to summary judgment on Miller's sex offender registry classification claim.

     3.  <u>The Exercise of Supplemental Jurisdiction</u>.  To the extent Miller seeks to invoke

the supplemental jurisdiction of this court with respect to those claims arising under state

law, he is entitled to no relief.  Review of pendent state law claims is only appropriate upon

exercise of this court's supplemental jurisdiction over a related constitutional claim.  In the

posture of this case, however, the court concludes that the exercise of supplemental

jurisdiction is inappropriate.

> Two factors determine whether state law claims lacking an independent federal
> jurisdictional basis can be heard in federal court with a federal claim over
> which the court has jurisdiction.  To exercise pendent jurisdiction [or what is
> now identified as supplemental jurisdiction] over state law claims not
> otherwise cognizable in federal court, "the court must have jurisdiction over
> a substantial federal claim and the federal and state claims must derive from
> a 'common nucleus of operative fact.'"  *Jackson v. Stinchcomb*, 635 F.2d 462,
> 470 (5th Cir. 1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86
> S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Miller & E.
> Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47
> (1975).

*L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The

exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v.*

*Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly

encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d

at 428.  In view of this court's resolution of the federal claims presented by Miller, any

pendent state claim is due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claim from

which the state claim arises is dismissed prior to trial, the state claim should be dismissed as well); *see also Ray v. Tennessee Valley Auth.*, 677 F.2d 818 (11th Cir. 1982).

## V.  CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that:

1.  The plaintiff's challenges to the Alabama Community Notification Act be and are hereby DISMISSED for lack of subject matter jurisdiction;

2.  The plaintiff's claim seeking tiered classification of the sex offender registry be DISMISSED as this claim provides no basis for relief;

3.  The defendants' motion for summary judgment (Doc. No. 11) with respect to the plaintiff's federal claims for relief be and is hereby GRANTED;

4.  The plaintiff's state law claims be and are hereby DISMISSED without prejudice;

5.  This case be and is hereby DISMISSED; and

6.  No costs are taxed herein.

A separate Final Judgment will accompany this memorandum opinion.

Done this 30th day of May, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE